## MITCHELL v EVATT et

Ohio Appeals, 2nd Dist, Franklin Co

No 3264. Decided Feb 10, 1941

G. C. Hafley, Cleveland; C. F. McConnell, Cleveland, and E. D. Howard, Cleveland, for plaintiff-appellant.

Thomas J. Herbert, Atty. General, Columbus; Graham & Wendt, Asst. Attys. General, Columbus, for defendants-appellees.

## OPINION

By GEIGER, PJ.

This matter had its inception in the Court of Common Pleas of Franklin County.

In the amended petition plaintiff alleges that in 1934 the Legislature enacted the Retail Sales Stamp Act, the declared purpose of which was to provide revenues with which to meet the needs of the state for poor relief in the existing economic crisis and for the use of the general revenue funds of the state and for school uses and various other governmental functions. It is alleged that at a subsequent date the Legislature enacted §§5546-26a and 5546-26b, providing in substance for the redemption of prepaid tax receipts; rules and regulations; and exceptions, the same being effective on February 28, 1939.

The act recites that to obtain the assistance in the collection of the taxes levied by §§5546-2 and 5546-26, of health, welfare, charitable, religious, educational, fraternal and patriotic organizations which were in existence on December 31, 1938, and other organizations, the consumer's portion of the prepaid tax delivered after May 1, 1939, by vendors may be presented by such organizations to the Tax Commission or its agents for redemption as therein provided. The consumer's portion of the prepaid tax receipts shall be redeemed when presented by any person or group, other than the enumerated organizations, provided there is presented therewith evidence that the person or group making the presentation has assisted the state in the collection of the tax. No redemption of the consumer's portion of the prepaid tax shall be made when presented by a vendor or a seller, provided that that limitation shall not apply to certain organizations. The rate of redemption shall be three per centum on the amount of tax represented by the prepaid tax receipt as printed on the face thereof, and the minimum face value of such receipts which may be presented for redemption shall be $100.00, and the minimum redemptive value shall be three dollars. The Tax Commission shall determine the amount of redemptive value of the quantity presented and shall certify such amount to the auditor of state, who, upon receiving such certification shall draw a warrant on the treasurer of the state in the amount certified, which shall be paid by the treasurer of the state from a rotary fund provided by the act. The provisions of the section relating to the redemption of the consumer's portion of the prepaid tax shall not apply where the tax levied is prepaid pursuant to the provisions of §5546-5 or §5546-31.

Sec. 5546-26b provides for a tax receipts redemptive rotary fund, and that upon the effective date of the act the treasurer shall **take from any moneys available in the general revenue fund and not otherwise appropriated**, the sum of $50,000.00 to be placed in a special fund to be known as a Tax Receipt Redemption Rotary Fund, and thereafter to keep said Rotary Fund at the full amount of $50,000.00, the same to be used for paying warrants issued by the auditor for redeeming the consumer's portion. (Emphasis ours).

The petition alleges the official position of those who are made parties defendant and further alleges that by virtue of the provision of §5546-26a the Tax Commission and the Department of Taxation have determined the redemptive values of quantities of consumer's portion of the prepaid tax presented to them for redemption and have certified to the auditor of the state who has thereupon drawn warrants on the treasurer in favor of the parties designated, which the treasurer has honored and paid from the special fund known as the "Tax Receipts Redemptive Rotary Fund" payments amounting to $126,000.00.

It is alleged that the sections enumerated are laws of a general nature but do not have uniform operation throughout the state and do not apply tax collected to any purpose for which the sales tax act was amended; that said statutes discriminate against individuals and organizations established

after December 31, 1938, and other groups in favor of organizations of the same class, thereby denying individuals and members of the same class the equal protection of the law; that said statutes provide for the expenditure for profit of public funds raised by taxation, clearly gratuitous and in the nature of a gift or bounty, and are in violation of the purpose for which said sales tax act was enacted, and violative of **Art. XII, §5 and Art. II, §26 of the Constitution of Ohio** and of Amendment 14, §1 of the Constitution of the United States; to the plaintiff's material and irreparable injury as a taxpayer.

Plaintiff prays that the said sections be declared unconstitutional and for a permanent restraining order against the officials named, from drawing any warrant for the redemption of any prepaid sales tax receipt.

Don H. Ebright, the treasurer of the state, answers, admitting several formal statements and denying all other allegations.

A like answer was filed on behalf of Joseph T. Ferguson, auditor of state.

William E. Evatt, as Tax Commissioner, admits the legislation as alleged in the petition and the official status of certain of the defendants, and further admits that he, pursuant to the authority granted by the provisions of §5546-26a has determined the redemptive value of some quantities of consumer's portions of prepaid tax receipts presented to him, and certified the amount to the auditor of state and has drawn warrants on the treasurer against funds appropriated by the legislature for the express purpose of paying the redemption of such sums, and that as a result thereof the treasurer has paid the same, but denies that any of such sums have been redeemed from the proceeds derived from the so-called "Sales Tax Law" or "Use Tax Law"; that he has made such determination for all persons who are authorized to present tax receipts for redemption.

The defendants, Jenkins, Hauntz and Ford, demurred to the plaintiff's peti-tion as not constituting a cause of action against them.

Thereupon the cause came on for hearing upon the pleadings, and counsel for plaintiff made a preliminary statement to the Court. The Court finds that the demurrers should be sustained, and the cause coming on to be heard upon the oral motion of the remaining defendants for judgment, the court finds that such motion is well taken, and it is ordered that the amended petition of the plaintiff be dismissed and judgment rendered in favor of each of the defendants, to which final order of the court the plaintiff gave notice of appeal upon questions of law.

The assignments of error of the plaintiff are to the effect that the court erred, 1st, in granting the motion of the defendants for a judgment on the amended petition and the opening statements of counsel; 2nd, that the Court erred in rendering judgment in favor of the defendants-appellees and against the appellant; and 3rd, that the judgment is contrary to law.

In the preliminary statement upon which judgment was rendered, when the question as to the right of the plaintiff to bring the action was under discussion, counsel for defendant stated:

"I think we can admit Mr. Mitchell is a taxpayer, that is, a sales taxpayer."

This matter came on for discussion when objection was made that Mitchell had not shown in his petition that he had any right to bring the action. His only claim to that right is that he was a taxpayer and that he was likewise a sales taxpayer. Mitchell does not make any claim that he is excluded from any rights which he may have acquired through the collection of the sales tax receipts, but relies solely upon the proposition that being a taxpayer he was sufficiently interested in the wrongful payment from the state funds of moneys derived from the payment of sales tax.

It is probably a very close question as to whether the plaintiff has estab-

lished his right to bring this action as a taxpayer, but we will not debate this point or withhold from him on that ground any remedy to which he may otherwise be entitled.

Plaintiff asserts that the act is not of uniform operation, for the reason that those who are vendors may not have the benefit of the act. The reason for excluding these from participating in the privilege is quite apparent, in that if those who sold goods were allowed to use the tax stamps as a basis for collecting the fund, they would not thereby be in any way stimulated to see that the purchaser paid the tax, but such vendors might simply gather discarded stamps and use the same for the purpose of collection from the fund without in any way having promoted the sale of stamps.

Plaintiff sets out other grounds upon which he claims the act to be unconstitutional, which may briefly be stated to the effect that a different rule is provided for those benevolent organizations which are authorized to make collections, between those which were in existence at the time of the passage of the act and those which came into existence at a subsequent date. It may very readily be conceded that the Legislature took this method of preventing organizations, which had no background of real benevolent activities, but which were organized after the passage of the act for the purpose of reaping whatever profit they might acquire from the collection of these sales tax receipts.

He also points out the provision that certain organizations may collect through the sales tax system without making any showing as to having assisted in the collection of the tax, whereas others, as a preliminary to their right to collect, must show that they gave assistance in the collection. The reasons that we have above enumerated would apply equally to this objection.

He seeks to impress us with the fact that due to such discriminatory provisions there is not a uniform operation throughout the state. We are not impressed with this argument. It has long been held in this state that a statute is general and uniform if it operates equally upon every person and locality within the conditions covered by the act, and when a classification has a reasonable basis it is not invalidated merely because not made with exactness or because it may result in some inequality.

We are of the opinion that the act is a legitimate provision by which the State "seeks to obtain the assistance in the collection of taxes", and the statement of the plaintiff's petition that over a period the State has paid out $126,000.00 based upon a 3% redemption on stamps which originally represented only 3% of the sales of merchandise, is evidence of the efficiency of the device.

The plaintiff has not shown that this $126,000.00 was paid out without any return made to the state by a larger payment of the stamp tax, and we are inclined to believe that much more is added to the original stamp tax than that paid out for the redemption.

The purpose of the amendment providing for the redemption of prepaid tax receipts is "to obtain the assistance in the collection of the taxes levied", of certain organizations enumerated. The purpose of the legislation was evidently to pay the premium to large groups of people who might be organized for the purpose of collecting the fund for their several charitable purposes. The amount to be collected is very small in comparison to the value of the merchandise sold to raise the sales tax. For example, in order to produce $3.00 of tax, theoretically $100.00 of merchandise must be sold, upon which the stamps of the face value of $3.00 are issued. The collector is entitled to 3% on the face value of the stamps. In other words, the collector would get, if the collection machinery was perfect, 9c for each $100.00 value of merchandise, or 90c for each $1000.00 of merchandise sold. It will thus be discovered that unless those collecting these sales stamps were ac-

454

tuated by some motive of charity or the desire to collect a benevolent fund, few would take the trouble to collect the stamps. Nevertheless, it is apparent that the supervision of these numerous individuals seeking a small profit for their favorite benevolence is a wholesome check upon the carelessness of the merchant in failing to collect the sales tax at the time the goods were sold.

The redemption act went into effect as of May 1st, 1939. While the collection and redemption of the sales tax stamps were authorized at that date, it is quite evident that before the machinery could be put into full operation, there was, of necessity, a period when it did not produce the highest results to be attained.

From May 1st, 1938 to April 30, 1939, sales tax collections were $41,324,812.05. This was the last full twelve-months' period of sales tax collections during which the redemption plan was not in effect. Sales tax collections for the period, May 1st, 1939, to April 30th, 1940, amounted to $48,708,066.29. This was the first twelve-months' period of the operation of the redemption plan and these figures indicate that the sales tax collections for the first full twelve-months' period of the redemption plan, i. e., May 1st, 1939, to April 30th, 1940, increased $7,383,254.24 over the corresponding period of the preceding year. In other words, the sales tax collections increased 17.7 per cent. during the first full twelve-months' period in which the redemption plan was effective, over the last full twelve-months' period prior to the adoption of the plan.

How much of this increase can be attributed to the plan of permitting the various organizations to redeem the sales tax stamps, can not be definitely ascertained, for the reason that there may have been a different economic condition during the years cited, but it is evident that there has been a steady increase in the amount collected from the sales tax since the redemption plan became operative, and it may safely be said that a large portion of this increase is attributable to the activities of the various organizations which are permitted to profit by the collection of cancelled sales tax stamps and the presentation of these cancelled stamps to the State for redemption.

Of course, it is improbable that the increase in sales tax collections will continue during subsequent years, by the same ratio, as they have since the redemption plan became effective, for the reason that in the collection of cancelled stamps promoted by the activities of these various organizations which are profiting by the redemption plan, there will come a time when the field has been harvested and no great increase may be anticipated from future operations, but if we are to rely upon the statistics and the history of collections prior and subsequent to the adoption of the redemption plan, we may be sure that, were the redemption plan to be abolished, there would be a sharp decrease in the collections of the sales tax. It is quite apparent that the plan has been successful in securing a large income from the sales taxes and that it has cost the State in redemption fees, much less than has been the increase in sales tax collections since the plan became operative.

It is predicted that the payment for the next year to those who collect these prepaid tax receipts for redemption, as a reward for their services will reach a million dollars, but it is apparent that the increase in sales taxes on account of their activities will far exceed this amount.

We are unable to detect any reason why the State could not legitimately use this plan, and we are, therefore, of the opinion that there was no error in the judgment of the Court below, and that the demurrer was properly sustained.

BARNES & HORNBECK, JJ., concur.